The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons have in any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning, counsel. We are happy to hear argument in our first case. Ms. Soderdahl, do I have that right? Good morning, Your Honor. It's Erica Soderdahl and I'm here on behalf of the appellant, Robert Christopher Cisson. May it please the Court. When Mr. Cisson purchased a firearm using counterfeit currency, he did not use or possess that firearm in connection with any other felony offense. Therefore, the District Court erred in applying the four-level enhancement under the United States Sentencing Guidelines, Section 2K2.1b6b in this case. We're asking this Court to vacate the determination that this guideline enhancement applied and remand this case to the District Court for resentencing. There wasn't, excuse me, wasn't his purpose in receiving the pistol to exchange his counterfeit money for a good, you know, like a a good. Yes, Your Honor. That is one of the government's arguments as to how Mr. Cisson's possession of the firearm was connected to his counterfeit currency offense. However, there's no evidence on the record to suggest that the reason that he arranged for the purchase of the counterfeit currency. So, no, I don't think that the evidence would suggest that that was the reason for his purchase of the firearm. But that's what he used to purchase the firearm with, correct? That is correct, Your Honor. He used counterfeit currency in exchange for which he received the firearm. But I would submit that the fact that the firearm was exchanged for counterfeit currency, the mere exchange of these items would not be sufficient to support the application of this and that would be based on the language of the enhancement under the guidelines and the commentary and, of course, the purpose for the enhancement as set forth in this case in the Blount opinion. The guidelines... I thought it was pretty clear that if you traded things, like if you traded drugs for a gun, that you would be, so why wouldn't that translate here? Instead of trading guns for drugs, he translated... Would you claim that if he had been the person that owned the drugs and got the gun for it, that there was no liability under the statute? Would you say it's still there, that there were not two crimes? Well, it's difficult to answer that question because the facts are so different and that would be... Well, the only fact that it's different is that we've substituted in drugs for a counterfeit currency. However, in the counterfeit currency offense, Mr. Sisson was charged in count two of the indictment with uttering counterfeit currency in violation of 18 U.S.C. 472. It is not an element of that offense that anything be received in exchange for the counterfeit currency or, in fact, that anything go beyond the mere offering of the firearm. In this case, where Mr. Sisson used counterfeit currency to purchase the firearm, his offense of passing counterfeit currency was complete before he came into possession of that firearm versus the fact scenario that you've offered, which is the exchange of drugs for guns. In this court and others, they have found that that could be in connection with the possession of a firearm because the firearm is in furtherance of, under the 924C language, or in connection with facilitated the distribution of drugs. The distribution of drugs has as an element that the drugs are actually distributed, that they actually change hands. It would be kind of like the offense of theft where a person steals a firearm. One of the elements of theft is an actual taking. So, the transfer of the possession of the firearm becomes a part and parcel of the offense. It is the firearm itself. What are the elements of the separate crimes, the firearm and counterfeiting? What's that have to do with the enhancement? Well, your honor, I think that the reasoning that this court and others have held in upholding the application of this enhancement in cases of drug distribution or theft is that it is an element of the offense that the firearm change hands or that the drugs change hands, that the actual distribution is what's furthered or facilitated by the possession of the firearm. Whereas in this case, the firearm was not in furtherance of, or it did not facilitate, I should say, the passing of the counterfeit currency, which was complete at the time that Mr. Sisson came into possession of the firearm. It's not suggesting that the, without the guns, there wouldn't have been a transfer, without the counterfeit currency, there wouldn't have been a transfer of the drug, of the guns. No, your honor. I don't believe that this gentleman who sold Mr. Sisson the firearm would have given it to him without an exchange of some currency. Yeah. Now, your honor, I submit that the determination of whether the guideline enhancement under 2k 2.1b6e applies is a very fact-specific inquiry that could turn on the factual nuances of each case. And in this case, the record is bereft of facts that would support the enhancement. The government simply did not prove that the firearm possessed by Mr. Sisson after he had completed the counterfeit currency offense was in furtherance of that counterfeit currency offense. In the facts that we have them, the government could have called a witness. In this case, it would have been the person who gave Mr. Sisson the firearm. And they could have had that witness testify at a sentencing hearing to facts that would support the enhancement to prove their theory that the enhancement applied. But here, in this case, the only facts in the record that were presented to the district court were those contained in the pre-sentence investigation report, which is at the joint appendix, page 55. The government's making arguments in support of the application of this enhancement that are not supported by this factual record. Again, the government's, I think, main argument, at least in its briefs, is that Mr. Sisson possessed this firearm in furtherance of, I'm sorry, to protect him or to embolden him to commit this offense of passing counterfeit currency. But the facts do not support this contention. The facts that were presented was that Mr. Sisson purchased an unloaded firearm. There's no direct or circumstantial evidence that Mr. Sisson used it to protect or embolden him to act. There's no proof that he kept it close at hand after the transaction had, after he had received it and the transaction was complete. There's no proof that he used the firearm in a threatening or intimidating way. There's no proof of any confrontation or any risk of confrontation between the seller of the firearm and Mr. Sisson. And no proof that Mr. Sisson was engaged in any kind of ongoing counterfeit currency operation for which he might want to protect that operation. Is there any proof that he knew the gun was unloaded? Well, there's no proof that the firearm... I know you... No, I don't think there's... So there's nothing either way, you know? Correct. There's no fact either way, Your Honor. That's correct. The only fact that we know is that he purchased a firearm. There's nothing about him purchasing ammunition or otherwise having access to ammunition at the time of this transaction. So all we know is that Mr. Sisson possessed an unloaded firearm. Now the purpose of the four-level enhancement to an offense level in cases involving firearms is to more greatly punish an individual whose felony offense is rendered more dangerous by the presence of a firearm. As this court noted in the Blount opinion, finding that there's an increased risk of violence when firearms are used or possessed in connection with another felony. But that purpose is not... Blount distinguishable at the beginning because, and as I remember those facts, you have a burglary and then you have the larceny of a firearm. Well, the burglary will have taken place regardless of what the ensuing larceny was, whether he stole the firearm or something else. But in this case, I'm having difficulty understanding how you have the firearm offense without having the counterfeit money offense and vice versa. It seems very different from Blount. You're correct, Your Honor. I don't think that there's a way to kind of divide up this transaction and have the passing of counterfeit currency separate from Mr. Sisson's receipt of the firearm. But I would submit that the mere fact that the two items were exchanged does not prove the facilitation requirement of the guideline enhancement. The mere fact that a firearm is present when another offense occurs is not sufficient to support the application of the enhancement. The government has the burden to facilitate it in some way, the other offense, which is the passing of counterfeit currency. But I would submit that it could have been any object that he would have purchased. That one of the arguments is that Mr. Sisson's purchase of the firearm facilitated the passing of counterfeit currency as if it were the purpose of the transaction. But again, I would submit that would turn the application of this 2k 2.1 v6 guidelines on its head. That would imply that the purchase of the firearm, that the, I'm sorry, that the passing of counterfeit currency facilitated or that the purchase of the firearm facilitated the passing of counterfeit currency, not the other way around. It's not whether the counterfeit currency facilitated, I'm sorry, not whether the purchase of the firearm facilitated the passing of the counterfeit currency, but whether the possession of the firearm facilitated that passing. So these cases are indeed very facts specific and perhaps what guides us here most is in fact the guidelines and the purpose of the guidelines. And this is an interesting case. It really presents a very close question, but you know, when you look at the Smith case, the purpose of at least of the gun was to facilitate the drug traffic. In this instance, you have a counterfeit money that in fact, I guess, facilitates the purchase of the gun. Counterfeit money could have been used to buy anything. And so that makes it somewhat more tenuous. And I guess your argument, when you go back, when you stick with talking about what the guidelines intended, and that is that the gun itself made the situation a more dangerous situation, it does put this case perhaps in a different posture than Smith and Blount. But you know, the burglary itself, at least in terms of the guidelines, it's tied to burglary. And I don't know if that's a specific type of crime that would differentiate this from something else, but to be able to use counterfeit money and go in and buy a gun, and then the gun itself becomes an enhancement because you purchased it. And I know the government will argue that he could have turned the gun around and maybe used it on him to keep his counterfeit money, if the owner questioned, I guess. But I agree. I don't, it doesn't make sense. And all the times I've seen people purchase guns, they don't purchase a loaded one. But I guess you could. And I don't know how that works. But it's a close case. But I think it's guideline, the guidance has to come from the guidelines. Your Honor, I agree. And I appreciate that the government's comment, the government's argument has been that Mr. Sisson could have turned around and use the firearm as a weapon against the seller of the firearm, if the seller had learned that the counterfeit, the currency was counterfeit. But I think that is, that argument is ruined by the fact that this firearm is unarmed, and the seller, unloaded, and the seller would know it's unloaded. Therefore, it makes the firearm, although, you know, technically, Mr. Sisson is armed, he's armed with a weapon. Does it have to be a firearm that is loaded? I mean, could it be used in a manner as a blunt instrument or something like that? It could be, Your Honor, but that, I'm sorry. Go ahead. It could be, but it makes it no more dangerous than it's a firearm than it's any other object. It could be a stapler for that matter, because the seller himself knows that it's not loaded. So the seller is not unduly threatened by the presence of this object that does not have bullets in it. And Your Honor- Who has the burden of showing that the gun is dangerous, in other words, that it is loaded? Is it presumed that a gun is loaded, or is it something that you, that at least the government has to show, at least through maybe testimony, an owner or somebody that this gun, in fact, was owned, or that it was the usual practice to load a gun and hand it to someone who would come in and purchase it with cash, I guess. In the application of enhancement, the burden rests on the government to prove sufficient facts to support the enhancement. And in this case, the government did not submit the facts that would support the enhancement. Your Honor also mentioned the offense of burglary. And as we all know, after Blount, the application note 14B was added. And although it does not apply in the circumstances of this case, it's, I believe that the language of 14B, the application note, is instructive. The Sentencing Commission could have included any number of offenses and singled them out for special attention, as it did in 14- You got about a minute. You had a minute, and I think we're all probably interested in, what are you going to do about that This is not good law. I believe I would do something different. Well, Your Honor is correct. In other words, I would do the same thing if I wasn't using this, I meant to say. In this case, the court did recite what I referred to as the standard mechanical language of, even if I've calculated the guidelines incorrectly, I still would have imposed the same sentence. I would note that in this case, the judge said, I believe I would have imposed the sentence, which I think is hedging language. But I would submit that this language alone is not sufficient to justify- Is that hedging language used in other cases of this sort? I mean, the other cases that I've looked at tends to be a little bit more specific, but does that make a difference if the judge says, I believe I would do it? I think it does, Your Honor. The judge is not in herself certain that she would do it, and she did not, in her language, say anything about an This is my time, not yours, because your time has expired. Just going along that same query, do you make any claim or do you make any suggestion to us that our doctrine about assumed error harmless is incorrect? No, Your Honor. I would agree that we- You think that's a good doctrine? Yes, Your Honor, I do. I just would submit that in this case, we would not get past the first prong of that analysis because we do not have the certainty that the court would have imposed the same sentence. Your Honor, the court was pleased and satisfied with imposing a within guideline sentence for Mr. Cizon. She then used this language that even if the guideline calculation were incorrect, she would have imposed the same sentence, but gives no explanation in her reasoning why she would have imposed an upward variant sentence. I think I understand your argument. You're over time now. You have some rebuttal time. Thank you. Thank you, Your Honor. Mr. Garner? Thank you, and may it please the court, my name is Ben Garner and I represent the United States. This court should affirm Mr. Cizon's sentence because the district court reasonably inferred that Mr. Cizon possessed a firearm in connection with the passing of $400 in counterfeit currency and correctly applied the four-level enhancement under Section 2K 2.1b6b. Alternatively- What is the case that you have found that is factually closest to this one? Because I agree with Judge Wynn, this seems like an odd bird. It's my language, not Judge Wynn's. A close case. Judge Motz, I have scoured Westlaw to find a case that is factually on point and I have not found one that is directly on point. However, I have found several that I believe support the fact that the enhancement should apply in this case. The case law is rather clear insofar as that it is a fact-specific inquiry to make a determination as to whether or not the firearm was connected to the other felony offense or whether it facilitated or the potential facilitate. What this court has time and again looked at are such factors as to whether or not the firearm was possessed in the dwelling of the were routinely kept in the dwelling. In this case, the transaction took place in the public and at night. Both of those factors play in favor of proof showing that the firearm was actually connected to the other felony offense. In this case, the passing of the- Well, it's clearly connected. I mean, if we had to, it's clearly correct that the false money, the counterfeit money was that if we had the reverse case, if you got an extra sentence because of the false money, you wouldn't have any problem. But that's really not what you have. I mean, the defendant here used the false money. And that was the object of what he got. There's no doubt about that. Absolutely. It's hard putting it the other way. Right. I apologize. I misinterpreted the question. And I think in this unique case, the best way to analyze the facts are not to compartmentalize the passing of the counterfeit money as well as the acquisition of the firearm. To the contrary, it was the same course of conduct. It was a singular transaction that took place simultaneously. And it's the government's position that the possession of the firearm, it's at least a reasonable inference from which the court could draw that the possession of the firearm either emboldened the defendant and also protected the defendant during the course of the transaction. The facts set forth in the precinct's investigation report, which were defense conduct was not objected to and formed the basis of the facts that the government argued in support of the enhancement. And as I indicated- Was it from a dealer? Was the seller a dealer? I seem to forget. I don't believe there's any indication as to whether or not the seller was a licensed dealer. The information in the record notes that he had marketed the firearm on a social media app. And the defendant, Mr. Sisson, used a fictitious name to orchestrate the purchase of the firearm. You say that once he sold the gun and the defendant had it, it emboldened the defendant at that point? Yes, Your Honor. Absolutely. And so far as at that point, the defendant- And how would it embolden him? Is there evidence that the gun was loaded? There's two places in the record that at least create an inference that the firearm was loaded. The first is in Joint Appendix 13. That is the indictment which charged Mr. Sisson with possessing both a firearm and ammunition on October 8th, 2016. Furthermore, paragraph 23 of the- That wouldn't be enough. So I guess the next paragraph is going to say because you just got ammunition and gun. And the next paragraph says what? Your Honor, I was just going to the next paragraph. There's going to be the next paragraph of the Precinct Investigation Report, which is paragraph 23. Also, it was not objected to. And it notes that ATF agent examined the and ammunition that Mr. Sisson purchased on October 8th, 2016. So there's at least some support in the Joint Appendix that the firearm was indeed loaded on October 8th, 2016. But what you're missing, at least what I'm not hearing, is the temporal element here. That is that it was loaded at the time of this, that he was purchasing it. I think it at least creates an inference that the transaction took place, the offense conduct took place on October 8th, 2016. There's no other evidence that I'm aware of, of Mr. Sisson possessing- So let me lead you where I think, well, let me ask you, because this is a concern of mine. If you have a dealer, basically what you're saying is a dealer, or any firearm dealer, because by virtue of the fact they're selling firearms and ammunition, the mere fact, well, not the mere fact, the fact that anyone goes in there and commits a felony of any type, by definition, they will have this enhancement applied to their felony. That is going to happen just because you purchased a gun or you acquired a gun from a gunshot. So you could actually walk in under this, it sounds like to me, you could come in and you might not even purchase one. You might do something that's a felony and you pick up one of those guns because you're kind of looking at it. Then you've got the enhancement, that's going to happen too, even if the felony has no connection to it, or even, maybe it does, but I'm trying to understand. It just seems to me it creates that environment of a gun dealer or someone who's selling guns. The gun is part of what the business is. The gun is inherent in what they're doing in the transaction, not like a drug trafficking. It might seem like it's inherited, not necessarily, but in a gunshot or a gun sale, there's a gun involved. That's already involved. The question here is he didn't bring the gun in. The gun is already there with the so-called victim here in this case, and it's not used to facilitate the counterfeit money because he brings the counterfeit money in, gives it to him, and once he gives the counterfeit money, isn't the crime complete at that time of counterfeit exchange, even if the gun is not handed to him right then? You have to show the gun is being handed to him right then, but once he gave the counterfeit money to him, then the next, it seems like to me when you say emboldened, you're talking about trying to get your money back. That's a different crime, isn't it? Judge, I just want to add a couple of responses to the question. In terms of the distinction between whether the firearm is sold from a licensed dealer at an established business, as opposed to the facts that happened here, I think that's a distinction that certainly matters, and it's certainly a limiting principle in the government's position before the court. I only bring it up because it seems to be applicable. If we rule in this matter, it will apply to that situation. That's all. It doesn't have to, whether he's licensed or unlicensed, someone who's in the business of selling guns or selling guns has the gun, and then so when he walks in and he hands the counterfeit money to him, usually people don't, I don't know, maybe he did. Maybe there's evidence he gave him the gun first. He examined it, took it, and then gave the money back. I don't know. Maybe that matters or not, but if you hand the money and then they give you the gun, which probably if I was selling a gun as a seller, I wouldn't give you my gun before I collected the money, but I'm just thinking, you know, how does that work? Does that matter? I mean, it seems to me it matters. If the crime is counterfeit money, handed it to him and received it, you've committed a crime then. That crime's complete. Once you then, the emboldened part of it of trying to get it back seems to me to be another thing. Judge Wynn, I think this certainly would be a different case. Say, for example, to the extent there was a temporal difference between when the counterfeit money was provided to the seller and when the defendant obtained the firearm. That's not the facts here. The facts here are that Mr. Sisson provided the seller the counterfeit money and in return immediately received the firearm. Well, I don't understand, excuse me, I don't understand how it's different at all. Let's take Judge Wynn's example. You have already talked to these people at the shop and you ascertained that they have the kind of gun that you want. So, you bring in your counterfeit money, you give the counterfeit money to them and they give you back the gun. Same situation as we have here, right? But Judge March, I think you have to look at the risks associated with the transaction that took place here and the risks are insofar as this was not a licensed drug dealer. There's nothing in the record to support it was a licensed drug dealer. This was an informal transaction in which Mr. Sisson used a fictitious name, duped the seller into exchanging the firearm for the counterfeit currency. Well, the duping is not any different than it is in Judge Wynn's example. I mean, he doesn't come in and say, this is counterfeit money that I'm going to pay for the gun. The purchase is with the same counterfeit money. I guess I think that we're getting pretty far away by adding extra elements. Suppose we take Judge Wynn's example and we have not a licensed gun dealer, but somebody on the street who sells guns and everybody knows he sells guns. And our guy wants a gun and he comes in and he says, okay, here's $500. He gives him the $500 and he gets the gun. Is it covered by this? How is that any different than the licensed gun dealer? The license isn't part of the statutory definition. It's not, but I would submit it is a factor that the court can consider in analyzing whether or not the firearm actually emboldens the defendant here. It was a transaction that took place very informally via social media, in which case the individuals were, Mr. Sisson and the seller were complete strangers. The transaction took place in a parking lot of a gas station at night. And so I think that certainly intensifies the risks associated with the change. You sell a gun at night. Inherently within that, they understand if you hand a gun over to someone with ammunition and get money back, you put yourself in that position. And I'm not saying that that wouldn't keep the element from being this from being emboldened. But the problem here is, again, the crime is counterfeit money exchange, I guess. He's completed it under this scenario. So then the next thing that happens is he's got it in his hand. The gun, for all purposes, is presumed to be lawfully possessed. We have gun laws that are all over the place, but that's pretty strong. Once you get a gun, you can have a gun in this country, there's no question about it. And once he gets the gun, then you say the fact that he now has a gun, presumably lawful, but not lawful because we later found out it's counterfeit. That's enough to say that the fact that he's already given counterfeit money to enhance that crime. You see where I'm going? If you keep this up, if we keep this up, it's the gun laws that's really being affected here. Because the possession of that gun, this thing, it carries to other instances. The possession of a gun, however you got it, and even after something has occurred, can be a problem. And Judge, I can certainly anticipate that there would be line drawing issues with application of this enhancement as it applies to licensed gun dealers. I think it's also important to note that in this case, with the seller, even though the seller did agree to the arrangement, did agree to the location, with the seller, there's no evidence to support the fact that the seller expected that Mr. Sisson would pay for the firearm. Let me ask you, what difference does it make whether or not the person who acquires the firearm is emboldened after he acquires it? I mean, don't the guideline specifications apply to the transaction that occurred before that? What difference does whether or not he's emboldened or not make? It's not the government's position that Mr. Sisson was only emboldened after he possessed, or after he acquired the firearms. The government's position that the entire transaction, the other felony offense in this case, the passing of the counterfeit money, that he was emboldened under the prospect that he would actually obtain the firearm. So, the passing, so that's actually what emboldened. Well, are you saying, is it the government's position that they have to prove this emboldenment in order for the enhancement to apply? No, Your Honor. That is certainly one way that this court has indicated to satisfy whether or not the firearm has the purpose or effect of, or has some purpose or effect on the other felony offense, or alternatively, facilitates or has the potential to facilitate the other offense. And that was the theory under which the government proceeded, or one of the theories under which the government proceeded below, and one of the theories under which the government is proceeding on appeal. I would note that this court has indicated that the district court is free to draw common sense inferences from the evidence to determine whether or not there was a logical connection or nexus between the firearm and the other felony offense. I think taking into consideration all of the facts and the circumstances given this case, the fact that it was a single transaction, same course or conduct, the transaction took place at night, in public, as opposed to the defendant's own home or dwelling, and the fact that the defendant essentially stole the firearm from the victim, all support a common sense inference that the firearm either emboldened Mr. Sisson, or alternatively, protected him while engaging in the other felony offense of the past month. What did it embolden him to do? You said embolden to not take the money back? It emboldened him to pass the counterfeit money in the first place. I thought you said he did that before he even got the gun. I indicated that it was part of the same course of conduct. It was a singular transaction. I understand that, but think about it in terms of the crime, and passing counterfeit money, I mean, yeah, you can stretch it as much as you want to. It could be when he walked out the door, whatever he's doing is still part of the crime. But the fact of the matter is, it's a non-violent crime. It's a crime of money. You're handing someone what appears to be real money. The person getting it thinks it's real money. He doesn't complain at that time. It's later on. So there's no, I mean, as I understand it, it's later on. He didn't try to contact him on Facebook to get the money back. He didn't. The person that got the money thought he had money. So everything you got here, there's no reason to be emboldened by someone who thinks they have good money. You can walk out and go do what you're going to do. And Judge Wyden, it is fortunate that the seller did not immediately discover that the money that Mr. Sisson provided him before he got it. That's my point. That's my point with the embolden or any other part of the transaction is, you know, you're giving the counterfeit money is given and he goes out and then you say he's emboldened. And later on, he contacts him. It could have been a year later. He contacted him and said, wait a minute, you know, I've been keeping this money over the corner and I found out now it's counterfeit. And by the way, you know, the court says, oh, you bought a gun with this? Enhancement. Even though neither one of them even thought about the fact, because that's what money is. It's not play money in terms of you look at it, the average person can look at it and do it. Usually it's money that can fool people to think you actually have money. So he thinks he has money. He goes out, he thinks he's, as you say, duped him into taking it for getting this gun for his money. And I don't get the connection. I don't get the connection with the gun emboldenment or transaction or anything else here because this gun is not used as a Smith to facilitate the purchase of drugs or the purchase of the gun. If he walked in with a gun and says, I'm going to give you this counterfeit money, give me a gun. I got it. And just when pursuant to the application notes of this guideline, it doesn't have to facilitate the other felony offense. It can also have the potential to facilitate. And you're correct that fortunately in this case, the seller did not immediately discover that the money was counterfeit. But Mr. Sisson did not know that when he engaged in the other felony offense of passing the counterfeit money. He engaged in a risk by essentially having the effect of stealing the firearm from the seller. So, fortunately, and so it's a different position that even if this court were to conclude that it didn't directly facilitate, it certainly had the potential to facilitate. And that is sufficient under the guidelines as well as this court's application and interpretation of the guidelines. In other words, you can purchase the means to facilitate the crime. That's what he did here. He basically sought to purchase a means from the victim. He purchased from the victim a way to commit the crime. Well, he acquired from the victim. He didn't pay in genuine money, but he did in effect steal. The parties thought at the time of the transaction, but I don't think it matters whether he acquired it, but he acquired it with the consent of the victim at the time. The victim comes in and hands him a gun and he hands him money. And then you say, well, this criminal has now committed an enhancement situation because the victim handed him the means to embolden him to facilitate this crime. But there was no guarantee in Mr. Sisson's mind that he would be successful in the exchange of the counterfeit currency and the acquisition of the firearm. There was a true risk here. You see where we're going. I get you and I feel where you're going on it, but see, you just said no guarantee in his mind. Now, who knows that? I don't know what a person, I can't even imagine having the nerve to walk in and hand someone counterfeit money for a gun in the first instance. I mean, the person with the gun looks back to me. It might not be happy with the fact I bring him a counterfeit money. He's the one that's got the gun. And then I'm trying to get it from him for counterfeit money. That's dangerous. And that's exactly why I emboldened the defendant. And so I see that I am out of time for all these reasons and the reasons. I have one question that we haven't touched on and that is this business about the imposition of sanctions. A late-breaking development? I'm sorry. I mean, I'm not sorry. Conditions of supervised release. Remember you wrote a letter about that? They wrote a letter. With respect to the Rogers Airplane, counsel for Mr. Sisson did provide to the court less than two days before oral argument, a 28-J letter setting forth claims of an alleged, two alleged Rogers Air based upon the district court's oral pronouncement of the sentence, including the conditions of supervision is the government's position. Pursuant to this court's case law, Alford and Leeson was recited in the government's response to the 28-J letter. But see, the problem with that is that the cases upon which the defendant relies on here were decided after the briefing in this case. And the cases upon... Sorry? I certainly don't dispute that, Judge Fine. I did not mean to interrupt you. No, no. And the case that you rely on, that's not the case. The precedent that you rely on is not the case. It wasn't decided after briefing. Yes, Your Honor. However, it's... And does that make a difference? Well, the government's position, Judge Mott, certainly would have been different if appellant's counsel had reached out to the government and asked to move to supplement briefing on this case. The primary authority upon which Mr. Sisson relies in the 28-J letter is United States versus Rogers, which is nearly two years old. This case has been pending for three years. But the two underlying cases, Rogers and Singletary, both took place after the briefing here, right? No doubt about that, yes, Your Honor. Okay. So you knew about them too, right? I mean, I'm not saying that they weren't late, but I've looked for a precedent that does what you tell us we should do, which is ignore them. This is because it's late-breaking. And frankly, it's not a good thing that it's late-breaking. But it strikes me that maybe this is an open question. Maybe we should get briefing on it. That's precisely what the government wanted in terms of developing the claims, what actually took place before the district court. The government did cite in its response to the Rule 28-J letter, United States versus Thompson, which is albeit a case from the Eighth Circuit. And in that case, the court refused to consider an argument raised for the first time in a 28-J letter, even when that argument relied upon circuit court precedent. Yes, but I've tracked those Eighth Circuit cases, and there are a bunch of them. They're very convinced about this. But there's not a lot of authority anywhere else. I couldn't find it. You haven't cited it. They haven't cited it. No, Your Honor. And the government's wanted the opportunity to fully brief the issue, rather than attempts to address that in a Rule 28-J letter where each party is confined. So what if we gave you each an opportunity to brief the issue? The government would have absolutely no opposition to that. All right. All right. Thank you. Thank you, Your Honor. I've kept you over your time. Do you have a rebuttal? Ms. O'Donnell, do you have a rebuttal? Yes, Your Honor, I do. First, I wanted to respond to some of the questions that were asked of Mr. Garner regarding the presence of ammunition and whether the firearm was loaded. And just in case that's not a resolved question, I would note that the indictment does allege on or about October 8th that Mr. Sisson possessed both the firearm and ammunition. But the facts that are set forth in the President's Investigation Report, on which the government rested in this case, suggest that Mr. Sisson was, the police went to his residence and found under his bed a firearm and ammunition two days after the transaction. So he was charged with the firearm and ammunition. They were found together, but not at the time of this transaction. And there's no evidence to suggest that the firearm was loaded at the time of the transaction. And so again, I would just note that the government has the burden of proving that enhancement applies. And the facts and circumstances that were presented in this case do not meet that burden. I would also like to respond to Your Honor's concerns about the late filing of the 28J letter. And I do apologize to the court for this late filing of supplemental authorities and apologize. I regret that I did not catch the issue sooner. However, as soon as it came to my attention, as I was preparing for this oral argument, I felt compelled to raise the has been committed to correcting these errors on appeal to remanding the cases for resentencing so that the error can be corrected. In fact, just yesterday, an opinion was released by this court, United States v. Isidro Cruz, case number 21-4065, in which another, it was an Anders brief, and this court, upon review of the record, learned of the error and did remand it. Regarding the cases cited in the government's response to the 28J letter, especially specifically about the Thompson case, the facts of that case are, as Your Honor pointed out, distinguishable because the person who was filing the 28J letter sought to add a Supreme Court opinion that had been decided before the briefing on that case. And then... cases are that, some of them are closer to the situation we have in hand. In Thompson, the 28J letter was filed after oral argument, despite the fact that the opinion had been issued before. And the court in that case, in finding that it would not consider the issue, said that this Rule 28J is not a vehicle for parties to say what they could and should have argued in their briefs. And that's what distinguishes it from this case. These issues at the time that the briefs were filed in this case. So, did you track down the other 8th Circuit cases? There is 8th Circuit authority that is in the same posture as this case. No, Your Honor, I did not. That's okay. So, why did you wait so long? Your Honor, I am a little bit new to the case. I was reviewing it with fresh eyes, and I was focused as I reviewed the case on the issue before the court. So, I focused my attention on the facts submitted in the record, the party's briefs, the sentencing record regarding what facts the court considered, and did not, I admit, did not focus my attention on the court's imposition of the supervised release violations. Right, but your office has represented Mr. Sisson for over two years. Yes, Your Honor, the case was held in abeyance for quite some time. That's correct. Would this have any practical... I'm sorry. No, I'll just be very frank. It bothers me significantly that counsel can represent a client for such a long period of time and then file two days before an oral argument. That's just not good practice. I do not dispute that, Your Honor, and I do apologize for that. I did feel it necessary to file something with the court to bring this issue to the court's attention as soon as I learned of it. I knew that it would be frowned upon, but I didn't see any other way to bring it to the court's attention. My apologies for that. I also wanted to... Can I just pursue this just a minute? Does this have any practical effect on your client? Is he about to be released? Only you know the facts here. Yes, Your Honor, Mr. Sisson is currently still serving the active sentence in this case. He tells me that he has received a release date of sometime in April of this year. He was released to a halfway house, is currently residing in a house on electronic monitoring, but his supervised release will begin in April. Despite the fact that he's no longer in prison, his liberty is still restricted by those supervised release conditions, so the issue is not moved. I thought one of the issues was that there was some discrepancy on where he was supposed to report to the probation officer, so if he's out, he's already done that, correct? I see that I'm over my time. May I respond to your question? Yes, yes, yes. Yes, Your Honor, Mr. Sisson has not yet been required to report. It's my understanding, based on the government's filing yesterday, that his probation officer that has been assigned to supervise him on release has contacted him and let him know where and when to report, but it's my understanding that he will not actually report until April. It may resolve, and I don't know that it does, but it may resolve one of the issues we raised in our 48J letter, but not the issue of the conditions that were imposed that Mr. Sisson was not given instruction of in the sentencing pronouncement. Thank you. Thank you.
judges: Diana Gribbon Motz, G. Steven Agee, James Andrew Wynn